**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF
APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| CLEVELAND-CLIFFS INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 24-1110 |
| | ) | (Consolidated with Case Nos. |
| UNITED STATES | ) | 24-1109 & 24-1107) |
| ENVIRONMENTAL | ) | |
| PROTECTION AGENCY and | ) | |
| MICHAEL S. REGAN, | ) | |
| Administrator, United States | ) | |
| Environmental Protection Agency | ) | |
| | ) | |
| Respondents. | ) | |

**REPLY IN SUPPORT OF MOTION TO TRANSFER REVIEW
PROCEEDINGS TO THE UNITED STATES COURT OF APPEALS FOR
THE EIGHTH CIRCUIT**

Respondents, the U.S. Environmental Protection Agency and its Administrator, Michael S. Regan (collectively "EPA"), and Petitioners Fond du Lac Band of Lake Superior Chippewa, Save Lake Superior Association, and Save our Sky Blue Waters (collectively "Environmental Petitioners"), oppose Petitioner Cleveland-Cliffs Inc.'s ("Cleveland-Cliffs") Motion to Transfer these proceedings to the Eighth Circuit Court of Appeals on the basis that the Eighth Circuit is the appropriate venue under the Clean Air Act. This Motion to Transfer is about who decides the venue issue, not its ultimate disposition. Transfer of these consolidated

cases is mandatory under 28 U.S.C. § 2112, which is the statutory mechanism for determining which circuit court will determine venue when appeals of the same regulatory action are filed in two different circuits. It establishes a "first-filed" rule, requiring that cases addressing the same issue be transferred to the Court of Appeals where the first petition was filed. In this case, U. S. Steel filed the first Petition for Review of *National Emission Standards for Hazardous Air Pollutants: Taconite Iron Ore Processing*, 89 Fed. Reg. 16,408 (March 6, 2024) ("Final Rule") in the U.S. Court of Appeals for the Eighth Circuit; therefore, this Court must transfer these proceedings to the Eighth Circuit because that is the process that Congress established when cases are filed in multiple circuit courts. The Eighth Circuit has before it EPA's Motion to Transfer or Dismiss the cases filed there by Petitioners U. S. Steel and Cleveland-Cliffs in which EPA is making the same argument set forth in its Response here, namely that venue should reside in the D.C. Circuit. That venue argument, however, is beyond the scope of this Motion to Transfer and should be ignored by this Court. In fact, it would be directly contrary to Congress's established procedure in 28 U.S.C. § 2112 for the D.C. Circuit to decide venue in the context of a motion seeking only to transfer these cases to the court designated to decide venue.

EPA and Environmental Petitioners cannot hijack this Motion to Transfer to present their argument on venue. But even assuming their arguments could be heard, as we have briefed in the Eighth Circuit in response to EPA's Motion to Transfer or

Dismiss in that Court, EPA is wrong. *See Cleveland-Cliffs Inc. v. EPA*, Case No. 24-1951, Response to Respondents' Motion to Dismiss or in the Alternative to Transfer to the D.C. Circuit (May 28, 2024), Doc. No. 5397988. EPA argues that the Final Rule is "nationally applicable", which requires venue in this D.C. Circuit under Clean Air Act ("CAA") § 307(b)(1), 42 U.S.C. § 7607(b)(1). Eighth Circuit Petitioners argue that the Final Rule is "locally or regionally applicable" for which CAA § 307(b)(1) requires venue in the appropriate Circuit for the region, which would be the Eighth Circuit for the Final Rule. The facts are not in dispute – the Final Rule applies only to sources in one small region of the country. The U.S. taconite industry consists of iron ore mining and processing facilities located exclusively in just four counties, three in Minnesota and one in Michigan. As EPA has recognized, taconite iron ore processing facilities are tied to the taconite iron ore mines; therefore, no taconite iron ore processing facilities do or will exist outside of this narrow geographic region. One and only one Court has the authority to decide this dispute over how CAA § 307(b)(1) dictates venue for the Final Rule. Congress established the procedure in 28 U.S.C. § 2112 to prevent conflicting decisions by ensuring that issues are only resolved by one Court. Accordingly, the D.C. Circuit must transfer the cases filed in this Court to the Eighth Circuit and the Eighth Circuit will thereafter decide venue.

# ARGUMENT

### A. The "First-Filed" Rule under 28 U.S.C. § 2112 Applies Here as the Mechanism for Determining Which Court Should Rule on Venue

Congress enacted 28 U.S.C. § 2112 to resolve venue issues where the same agency action is appealed in two different circuits. When neither appeal is filed within ten days of the final agency action, as was the case here, EPA is directed to file the record on appeal "in the court in which proceedings with respect to the order were *first* instituted." 28 U.S.C. § 2112(a)(1) (emphasis added). Transfer is mandatory under Section 2112(a)(5) which provides that "[a]ll courts in which proceedings are instituted with respect to the same order, other than the court in which the record is filed pursuant to this subsection, *shall* transfer those proceedings to the court in which the record is so filed." (Emphasis added.) Here, the first Petition for Review of the Final Rule was filed by U. S. Steel in the Eighth Circuit on May 3, 2024. Thus, EPA is obligated to file the record in the Eighth Circuit making transfer to the Eighth Circuit mandatory so it can determine venue.

EPA and Environmental Petitioners invent a statutory conflict and then claim that 42 U.S.C. § 7607(b)(1) trumps 28 U.S.C. § 2112 in all CAA rulemaking challenges. *See, e.g.,* EPA Response, p. 9 ("The CAA's specific venue provision (42 U.S.C. §7607(b)(1)) renders 28 U.S.C. §2112 inapplicable to this case."); Envtl. Pet. Response, p. 7 ("Industry Petitioners read 28 U.S.C. §2112(a) as conflicting with – and nullifying – Clean Air Act § 307(b)(1)'s requirement that petitions for

review of § 112 emission standards and other nationally applicable regulations be filed 'only' in the D.C. Circuit.").

No such conflict exists as *both* provisions can be applied in harmony: (1) 28 U.S.C. § 2112 governs *which court* decides the appropriate venue of an action, and (2) 42 U.S.C. § 7607 determines the subsequent question of *which court has venue*. *See Liquor Salesmen's Union Local 2 v. N.L.R.B.*, 664 F.2d 1200, 1205 (D.C. Cir. 1981) ("It must be emphasized that § 2112(a) is a mechanical device to determine which court will determine venue, not which court will ultimately hear the case."). Therefore, this Court need not choose one or the other – with respect to *this* Motion to Transfer, 28 U.S.C. § 2112 applies. *See Adirondack Medical Center v. Sebelius*, 740 F.3d 692, 698-699 (D.C. Cir. 2014) ("Absent clearly expressed congressional intent to the contrary, it is our duty to harmonize the [statutory] provisions and render each effective.").

EPA argues that 28 U.S.C. § 2112 is not relevant because there is not more than "one appropriate circuit." *See* EPA Response, p. 9 (quoting *Dayton Power & Light Co. v. EPA*, 520 F.2d 703, 708 (6th Cir. 1975)). However, Courts have explicitly relied on 28 U.S.C. § 2112 when determining whether to transfer petitions for review of a CAA ***rulemaking*** appeal where a petition for review was filed in one circuit as well as a "protective appeal" in another circuit. *See Nat'l Parks Conservation Assoc. v. EPA*, 991 F.3d 681 (5th Cir. 2021). In *National Parks*

*Conservation*, petitioners challenged a 2020 rulemaking titled "Promulgation of Air Quality Implementation Plans; State of Texas; Regional Haze and Interstate Visibility Transport Federal Implementation Plan," 85 Fed. Reg. 49, 170 (Aug. 12, 2020), filing an appeal in the D.C. Circuit and a "protective appeal" in the Fifth Circuit. The Court explained: "Though not cited by the parties, this Court noted that *§ 2112 provides a 'mechanical rule for determining which court should determine venue in the case of conflicting petitions for review*.'" *Id.* at 684 (emphasis added) (quoting *Superior Indus. Int'l v. N.L.R.B.*, 865 F.2d 1, 2 (1st Cir. 1988)). It concluded that "[b]ecause Petitioners first filed their challenge to the 2020 Rule in the D.C. Circuit, that court should be the first to determine the venue question." *Id.* at 684-685.

Therefore, CAA § 307(b)(1) does not trump 28 U.S.C. § 2112 in all rulemaking challenges as asserted by EPA. EPA's and Environmental Petitioners' arguments go to the appropriate venue under CAA § 307(b)(1), by arguing the only plausible venue is the D.C. Circuit. This conclusion is incorrect. While 42 U.S.C. § 7607(b) will ultimately determine the appropriate venue for this Final Rule challenge, it is improper to disregard 28 U.S.C. § 2112 which is Congress's chosen mechanism for selecting *which court will determine venue* under CAA § 307(b)(1). Because the first petition for review of the Final Rule was filed in the Eighth Circuit, these cases must be transferred to that Circuit for the venue determination. This

mandate precludes the D.C. Circuit from considering venue to avoid multiple Circuits reaching different conclusions on this threshold issue. This Court need look no further to reject the venue arguments presented by EPA and Environmental Petitioners and grant this motion.

**B.** **EPA Errs in Claiming the D.C. Circuit is the only Plausible Venue; Rather, CAA § 307(b)(1) Dictates Venue for "Regionally Applicable" Rules, like this Taconite Rule, be Filed in the Appropriate Circuit for the Region**

As detailed above, there is neither authority nor reason to delve into the substance of EPA's CAA §307(b) arguments here. They must be heard and determined in the Eighth Circuit as 28 U.S.C. § 2112 requires. Nonetheless, Petitioner presents its responses to the substance of EPA's and Environmental Petitioners' CAA §307(b) arguments as a protective matter.

**1.** **CAA § 307(b)(1) Establishes the Framework for Jurisdiction and Venue Dependent on Whether the Final Rule is "Nationally" or "Locally or Regionally" Applicable**

CAA § 307(b)(1) provides for assignment of jurisdiction and venue for EPA actions. First, with respect to "nationally applicable actions":

> A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, . . . or any other *nationally applicable* regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia.

42 U.S.C. § 7607(b)(1) (emphasis added). Second, a petition for review of a final action that is "locally or regionally applicable" may be filed only in the appropriate U.S. Court of Appeals for that region:

> A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412 of this title, under section 7419 of this title, or under section 7420 of this title . . . ***or any other final action of the Administrator*** under this chapter (including any denial or disapproval by the Administrator under subchapter I) ***which is locally or regionally applicable*** may be filed only in the United States Court of Appeals for the appropriate circuit.

*Id.* (emphasis added).[1]

## 2. EPA Oversimplifies the CAA § 307(b)(1) Analysis

EPA and Environmental Petitioners oversimplify the CAA jurisdictional provision. *See* EPA Response, p. 13 (the Final Rule "is neither an order under section 7412 nor an 'action which is locally or regionally applicable.'"); EPA Response, p. 9 ("there is one and 'only' one appropriate circuit for the review of an action promulgating 'any emission standard or requirement under section 7412,' and that is the D.C. Circuit"); *see also* Envtl. Pet. Response, p. 4 ("Section 112 emission

---

[1] A narrow exception is provided to the "locally or regionally applicable" category for an action "based on a determination of nationwide scope or effect" where EPA has published "that such action is based on such a determination," in which case, the petition for review must be filed in the D.C. Circuit. *Id.* EPA has not made a determination of nationwide scope or effect or published such a determination with respect to the Final Rule and did not argue in its Response that it has; therefore, Petitioner will not address this irrelevant exception herein.

standards are always nationally applicable and reviewable only in the D.C. Circuit."). However, CAA § 307(b)(1) does not make a distinction between agency actions and rulemakings. In *Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019), the D.C. Circuit clarified that: "In distinguishing between nationally and regionally applicable agency action, Section 307(b) does not track the familiar distinction under the Administrative Procedure Act between rules and adjudications … Nor does it categorically direct review of orders resolving adjudications to the regional circuits and review of legislative rules to this court."

The CAA Amendments of 1970 established the judicial review standard under CAA § 307(b)(1) but did not include a distinction for "locally or regionally applicable" final actions by the Agency. Instead, it stated: "A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 110 or section 111(d) may be filed in the United States Court of Appeals for the appropriate circuit." *See* Clean Air Act Amendments of 1970, Pub. L. No. 91-604, sec. 12(a), 84 Stat. 1676, 1708 (Dec. 31, 1970). Congress later amended the language in CAA § 307(b)(1) to include a catch-all category "for ***any other final action*** of the Administrator under this Act which is locally or regionally applicable." *See* Clean Air Act Amendments of 1977, Pub. L. No. 95-95, sec. 305(c)(2), 91 Stat. 685, 776 (Aug. 7, 1977) (emphasis added).

9

The specific statutory provisions listed in CAA § 307(b) are intended to be examples and not a mandate given Congress's decision to provide an expansive catch-all category specific to "locally or regionally applicable" final actions by the Agency. *See Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 588-589 (1980) (finding that "[w]hen Congress amended the provision in 1977, it expanded its ambit to include not simply 'other final action' but '*any* other final action;'" and that this amendment "expanded the jurisdiction of the regional courts of appeals to include review not only of certain local or regional actions under specifically enumerated provisions, but also '*any other final action* of the Administrator under [the Act] which is locally or regionally applicable'").

Despite EPA's blanket statement that the "plain language of the statute" "unambiguously declares that a challenge to emissions standards or requirements promulgated under 42 U.S.C. § 7412 can be considered 'only' in the D.C. Circuit," (EPA Response, p. 12) the truth is that courts have found that CAA § 307(b)(1) "is not a model of clarity" and "[i]nterpreting it requires close attention to detail." *Texas*, 829 F.3d 405, 419 (5th Cir. 2016).

Furthermore, EPA is not entitled to deference with respect to its venue declaration. Rather, the question is left for the Court's independent evaluation. *Id.* at 421 ("Petitioners suggest that we must make our inquiry as to the scope or effect of the determinations independent from EPA's finding because the inquiry governs

the powers of the court rather than those of the agency . . . . We agree with Petitioners."). EPA's oversimplified and overgeneralized declaration on venue warrants no deference.

### 3. The Final Rule is Regionally Applicable

Regardless of whether the Final Rule creates national emission standards, its real-world effect is purely regional. *See Sierra Club v. EPA*, 47 F. 4th 738, 744 (D.C. Cir. 2022) (in response to an argument that a national regulation is a "nationally applicable action," the Court concluded that "[t]he 'immediate effect' of the rules is confined to [local cities], rendering them locally or regionally applicable."); *Nebraska v. EPA*, 812 F.3d 662, 669 (8th Cir. 2016) ("This court has jurisdiction over [the] petition for review, including the challenge to EPA's reliance on the Transport Rule, because the plan is a locally or regionally applicable action.").

"Determining whether an action by the EPA is regional or local on the one hand or national on the other should depend on the location of the persons or enterprises that the action regulates rather than on where the effects of the action are felt." *See New York v. EPA*, 133 F.3d 987, 990 (7th Cir. 1998); *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 994 (8th Cir. 2016) ("*the location of the persons or enterprises that the action regulates*" determine venue) (quotations omitted; emphasis original); *Hunt Refining v. EPA*, 90 F.4th 1101, 1112 (11th Cir. 2014) ("the plain meaning of the words 'nationally applicable' … looks to the

11

location of the persons or enterprises that the action regulates.") (quotations omitted). Here, the "persons or enterprises that the action regulates" are entirely regional.

EPA's statements that "…there is nothing about the 2024 Taconite Rule that is only locally or regionally applicable" and that "[t]here is no plausible basis for concluding that the Rule is 'locally or regionally' applicable, such that venue would be proper in one (and only one) regional circuit," are categorically wrong. *See* EPA Response, p. 14. These broad statements cannot sidestep the uncontestable fact that the taconite industry is geographically limited and will stay that way for good reason; that is where the taconite ore deposits are located and mined.

EPA's own statements throughout the years establish as much. As EPA recognized in the Preamble to the Final Rule, "[t]here are currently eight taconite iron ore processing plants in the United States: six plants are located in Minnesota and two are located in Michigan." *See* 89 Fed. Reg. at 16,409-16,410. Thus, EPA recognizes the limited number of plants in only two states affected by the Final Rule. Indeed, in its original 2003 Taconite NESHAP rulemaking, EPA explained that the taconite plants "are located within four counties in Minnesota and one in Michigan. Thus, the [economic] impacts of the final rule are expected to be concentrated geographically." *See* 68 Fed. Reg. at 61,886.

12

The regional nature of the regulated facilities is no accident. As EPA recognized, each taconite plant is "located directly proximate to its own mining source." *Id.* at 61,879. The taconite necessary for these operations is mined from the Mesabi Iron Range near Hibbing, Minnesota and the Marquette Range in Michigan. These ores are located *only* in Michigan and Minnesota, reinforcing the strictly regional nature of the regulated operations to which the Final Rule applies. All regulated taconite operations occur in Minnesota and Michigan for the simple reason that they are innately tied to the taconite iron ore present there. An industry exclusively confined to two states by geology is inherently regional, rendering the rules governing those operations regional too. Here, EPA recognizes that "taconite processing sources are, at the present time, operating in just two States," but fails to note that it is not just the "present time" it is for all time that these are the *only* two states where taconite is and will be mined and processed. *See* EPA Response, pp. 14-15.

### 4. The Fact that Taconite Processing Plants are in Two Jurisdictions Does Not Make This Regional Rule Nationally Applicable

EPA unpersuasively argues that the "two States where existing affected sources are currently located are themselves in different judicial circuits," and therefore, there is no "singular" appropriate circuit. *See* EPA Response, p. 15. Similarly, Environmental Petitioners suggest that Cleveland-Cliffs' statements that the taconite iron ore processing facilities are in the same "region" is somehow wrong

because these facilities are located in two judicial circuits. *See* Envtl. Pet. Response, pp. 5-6.

Courts have found that this argument is "unpersuasive and improperly focuses on the nature of the rule as a whole and not on the determinations on which the Final Rule is based." *Texas*, 829 F.3d at 422. In *Texas*, the Court even noted that "[i]n another SIP assessment for Michigan and Minnesota – neighboring states falling in different circuits – EPA did not argue that determinations of nationwide scope or effect existed even though the plans regulated facilities in both states." *Id.* at 423. Cleveland-Cliffs has correctly stated that these facilities are located in the *same small geographic region* – a handful of counties in Minnesota and Michigan – neighboring states. Thus, there is no merit to either Respondents' or Environmental Petitioners' claims that the taconite iron ore processing facilities are somehow "national" because they are located within two neighboring judicial circuits.

## C.   Pending Prior Rule Challenges Are Irrelevant

The present venue of pending challenges to the 2003 and 2020 taconite rulemakings where Cleveland-Cliffs is an intervenor is irrelevant here. EPA states that each of these prior rulemaking challenges were brought before the D.C. Circuit. It speculates that "[t]he parties contemplate moving to consolidate the recently filed consolidated challenges to the 2024 Taconite Rule with pending challenges to the 2020 Taconite Rule that have been held in abeyance …" *See* EPA Response, p. 7.

It also states that "both the 2003 and 2020 Taconite Rules were challenged in the D.C. Circuit, and Petitioners, intervenors in those cases, took no action to seek to dismiss either of those actions for lack of venue." *Id.* at p. 17.

First, EPA's reference to the appellate circuit where the 2003 and 2020 rulemaking challenges were filed is irrelevant because Cleveland-Cliffs did not initiate those appeals. Furthermore, the filing of previous appeals does not mandate the jurisdiction or venue for a future rule challenge. *See, e.g., Nat'l Parks Conservation Assoc.*, 991 F.3d at 684. (venue of prior rulemaking appeal did not dictate venue of subsequent rulemaking appeal). EPA implies that Petitioner has somehow waived jurisdiction based on these prior, pending cases. However, subject matter jurisdiction involves a court's power to adjudicate a certain matter and cannot be waived. *See Williams v. Rogers*, 449 F.2d 513, 518 (8th Cir. 1971) ("parties cannot waive lack of subject matter jurisdiction whether by express consent or by conduct"); *Nyffeler Const., Inc. v. Secretary of Labor*, 760 F.3d 837, 841 (8th Cir. 2014) ("Not only may a party never waive the court's jurisdictional authority to hear a case, but we 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'") (internal citations omitted).

Second, EPA employs significant speculation by assuming *future* actions that parties to pending litigation *might* take. No parties have moved to consolidate the

appeal of the 2024 Final Rule with previous rulemaking challenges. Indeed, if this does occur, the parties can move to transfer those cases to the Eighth Circuit for consolidation. Speculation about other proceedings is a red herring.

### D.     There Is No Risk of Multiple or Inconsistent Decisions

There is no risk of multiple and/or inconsistent judicial rulings here. Respondents argue that there is the potential for "inconsistent rulings on similar or even identical issues" if the 2024 rulemaking appeals are transferred because the 2020 rulemaking appeals remain before the D.C. Circuit. *See* EPA Response, pp. 18-19. This is mere speculation as no parties have yet moved to consolidate the appeals. Should the cases be consolidated, they will be treated as one case for determining venue for the remainder of the proceedings. Thus, there is no risk of multiple or inconsistent decisions.

Environmental Petitioners suggest that by not acquiescing to venue before the D.C. Circuit, Petitioner Cleveland-Cliffs is somehow forum shopping. *See* Envtl. Pet. Response, pp. 8-9. To the contrary, Cleveland-Cliffs' arguments comport with the venue provisions of CAA § 307(b)(1). Fundamentally, the parties disagree as to whether this is a national or regional rulemaking. Because it is clearly of regional applicability, Petitioner Cleveland-Cliffs has moved for this case to be heard in the "appropriate circuit" – the Eighth Circuit.

## CONCLUSION

For the reasons stated above, Cleveland-Cliffs respectfully requests that this Court transfer the above-captioned proceedings to the United States Court of Appeals for the Eighth Circuit.

Respectfully submitted,

Dated: June 4, 2024

/s/Douglas A. McWilliams
Douglas A. McWilliams (D.C. Cir. No. 49715)
Allen A. Kacenjar (D.C. Cir. No. 49708)
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower, 127 Public Square
Cleveland, Ohio 44114-1304
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
douglas.mcwilliams@squirepb.com
allen.kacenjar@squirepb.com

Rebekah M. Singh (D.C. Cir. No. 52306)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center, 41 S. High St.
Columbus, Ohio 43215
Telephone: (614) 365-2700
Facsimile: (614) 365-2499
rebekah.singh@squirepb.com

*Counsel for Petitioner Cleveland-Cliffs Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing Reply in Support of Motion to Transfer Review Proceedings to the United States Court of Appeals for the Eighth Circuit complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,974 words, excluding the parts of the motion exempted under Rule 32(f), according to the count of Microsoft Word.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

Dated: June 4, 2024

/s/ Douglas A. McWilliams
Douglas A. McWilliams
*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Douglas A. McWilliams  
Douglas A. McWilliams  
*Counsel for Petitioner*
